STATE OF CONNECTICUT *v.* WILLIE GARVIN
(15092)

Dupont, C. J., and Landau and Heiman, Js.

Argued June 11—officially released September 17, 1996

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*Paul J. Ferencek*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Michael Pepper*, assistant state's attorney, for the appellee (state).

DUPONT, C. J. The issues on appeal are (1) whether the defendant's conviction on two counts of failure to appear in violation of General Statutes § 53a-172 violated his federal constitutional right to be free of double jeopardy and (2) whether the trial court had an affirmative obligation to tell the defendant that he could withdraw his plea of guilty at his sentencing proceeding.[1]

The record reveals the undisputed facts and procedural history that follow. Two separate incidents caused the state to charge the defendant by way of two separate informations. One information charged the defendant with the crime of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (4), and the other with the crimes of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), and risk of injury to a

---

[1] The defendant characterizes this second issue as follows: The trial court exceeded its authority when it conditioned a plea agreement on the defendant's appearance in court on the scheduled sentencing date.

child in violation of General Statutes § 53-21. The robbery charge stemmed from an incident on or about June 28, 1993, and the sexual assault and risk of injury charges stemmed from an incident on or about December 6, 1992.

On February 5, 1994, bail in each case was set at $15,000, and on November 7, 1994, the defendant, pursuant to a plea agreement with the state, pleaded guilty to all charges under the *Alford* doctrine[2] in exchange for a recommendation of a total effective sentence of fifteen years incarceration suspended after eight years with three years probation. The trial court informed the defendant that if he failed to appear at the sentencing hearing scheduled for January 6, 1995, the trial court would no longer follow the agreement and could impose the maximum sentence allowed for all three charges, which totaled forty years. The trial court also informed the defendant that if a sentence greater than the bargained sentence was imposed, he could withdraw his guilty pleas.[3]

---

[2] *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[3] The following colloquy occurred:

"The Court: I'm going to sentence you on January 6. Understand that?

"The Defendant: Yes, sir.

"The Court: Now, if I give you more than fifteen [suspended] after eight and three probation, you can take your plea back. Understand that? As long as I give you that sentence you can't take your plea back by saying I violated the plea agreement. Your understand that?

"The Defendant: Yes, sir.

"The Court: Now, if you don't show up on January 6, I'm going to order a rearrest, and they are going to come and they will find you, and they'll arrest you. Now you are charged with failure to appear, you could get five years and or $5000 on that. You understand that?

"The Defendant: Yes, sir.

"The Court: But, I'm not going to be bound by the plea agreement of fifteen years suspended after eight years and three years probation. You understand that?

"The Defendant: Yes, sir.

"The Court: If you don't show up, when they catch you, I could give you anywhere from nine months to forty years on the robbery, risk of injury, and the sexual assault second degree, plus you have the failure to appear to worry about. You understand that?

The defendant failed to appear for both his presentence investigation interview and his January 6 sentencing hearing. At that time, the trial court noted that the defendant failed to appear for sentencing and that it was not obliged to impose the bargained sentence. The trial court ordered each bond from each case forfeited and issued two bench warrants for the defendant's arrest. The defendant was apprehended and the state charged him with two additional felony counts of failure to appear in the first degree in violation of General Statutes § 53a-172 for his wilful failures to appear for sentencing for the charges against him in each case.

On July 10, 1995, the defendant appeared before the trial court and was sentenced on both his outstanding convictions and his failure to appear charges. At the commencement of the hearing, the trial court reminded the defendant of the effect of his failure to appear, namely, that the court was no longer bound by the plea agreement. The defendant then moved to withdraw his guilty pleas on the sole ground that he was under the influence of drugs at the time he entered those pleas. The trial court denied the motion for lack of evidentiary support and, following sentencing arguments, imposed a total effective sentence of eighteen years incarceration, execution suspended after twelve years, with three years probation. The defendant did not attempt to withdraw his guilty pleas during the sentencing hearing on the ground that the court failed to follow the plea agreement.

The defendant then pleaded guilty to both counts of failure to appear, and the trial court sentenced him to one year incarceration on each count, to run concurrently with each other and with the sentences imposed arising from the previous pleas.

"The Defendant: Yes, sir.
"The Court: Any misunderstanding about that?
"The Defendant: No, sir."

## I

## DOUBLE JEOPARDY CLAIMS

### A

### Two Counts of Failure to Appear

The defendant claims that his convictions on two counts of failure to appear, both in violation of § 53a-172, violated his federal and state constitutional rights[4] against double jeopardy because the counts arose from the single act of failing to appear at the January 6 sentencing hearing.[5] The defendant failed to raise this issue to the trial court and, therefore, seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[6] The record is adequate for review, and this claim implicates a constitutional right prohibiting one's life or limb to be put twice in jeopardy for the same offense. We, therefore, turn to the question of whether a violation of such right clearly exists.

" 'The proper double jeopardy inquiry when a defendant is convicted of multiple violations of the *same* statu-

---

[4] The double jeopardy clause of the fifth amendment to the United States constitution provides in relevant part that "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ."

The Connecticut constitution does not include a specific double jeopardy provision, but the due process guarantee of article first, § 9, has been interpreted to provide one. *State* v. *Chicano*, 216 Conn. 699, 706, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991).

[5] The defendant has offered no separate analysis under the state constitution. We, therefore, choose to consider the claim solely under the federal constitution. See *State* v. *Blackwell*, 20 Conn. App. 193, 195–96, 565 A.2d 549, cert. denied, 213 Conn. 810, 568 A.2d 794 (1989).

[6] The defendant can prevail only by satisfying all of the following conditions: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

tory provision is whether the legislature intended to punish the individual acts separately or to punish only the course of action which they constitute. *Albernaz* v. *United States*, 450 U.S. 333, 337, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981); *Whalen* v. *United States*, 445 U.S. 684, 691, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980).' . . . *State* v. *Rawls*, 198 Conn. 111, 121, 502 A.2d 374 (1985)." (Emphasis in original.) *State* v. *Freeney*, 228 Conn. 582, 587–88, 637 A.2d 1088 (1994). "The issue, though essentially constitutional, becomes one of statutory construction." *State* v. *Rawls*, supra, 120.

A plain reading of § 53a-172 and a review of Connecticut case law are necessary to resolve this issue. General Statutes § 53a-172 (a) provides: "A person is guilty of failure to appear in the first degree when, while charged with the commission of a felony and while out on bail or released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear." Section 53a-172 is classified as a class D felony.

In *State* v. *Candito*, 4 Conn. App. 154, 161, 493 A.2d 250 (1985), we determined that the existence of an underlying felony charge in connection with the failure to appear was a necessary element of the crime of failure to appear in the first degree. In that case, the state charged the defendant with failure to appear in violation of § 53a-172 as a result of his failure to appear in court on the day of his scheduled sentencing for five felonies to which he had pleaded guilty. Id., 156. The defendant was convicted of the crime of failure to appear after a jury trial. On appeal, he claimed that the trial court improperly admitted into evidence the specific felonies for which he had been found guilty at the time he failed to appear. Id. We concluded that because the state had to prove beyond a reasonable doubt that the defendant " 'while charged with the commission of a felony,' 'wilfully' " failed to appear, the

underlying felony charges to which the defendant had pleaded guilty were relevant and material to the elements of the crime of failure to appear. Id., 161. The elements of § 53a-172, therefore, require that the state prove beyond a reasonable doubt that while charged with the commission of a felony and out on bail or released by procedure of law, the charged person wilfully fails to appear when legally called.

Failure to appear pursuant to the statute requires proof of an underlying crime. The statute pertains to the punishment of individuals who wilfully defy a court's authority to require them to appear in court to answer to *a specific criminal charge*, not to the punishment of those who merely wilfully fail to appear in court when called. Had the legislature intended to punish only the act of failing to appear, it would not have added the element of "while charged with the commission of a felony." General Statutes § 53a-172. Each failure to appear relates to the underlying charge for which the individual failed to appear. Another statute, General Statutes § 53a-173, punishes for failure to appear to answer to a misdemeanor. Thus, if the two separate crimes for which the defendant was to be sentenced were a misdemeanor and a felony, two separate charges of failures to appear would have been proper. These statutes, §§ 53a-172 and 53a-173, seek to punish the wilfulness of failing to appear *to answer to a specific charge* when legally called according to the terms of a bail bond or promise to appear. If the legislature merely intended to punish the act of failure to appear, it would not have created separate statutes and imposed different penalties for those individuals refusing to appear for a felony as opposed to a misdemeanor.

If § 53a-172 were interpreted as the defendant would have us interpret it, the result would be an absurdity. If an individual wilfully failed to appear in court to answer to both a felony charge and a misdemeanor

charge, each arising from separate incidents; *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932); the individual could be charged with failure to appear under both §§ 53a-172 and 53a-173 because each statute requires proof of a different element. If, however, he failed to appear to answer two separate felony charges arising from separate incidents, both being serious crimes, the defendant's argument would mean that he could be charged with only one count of failing to appear under § 53a-172.

The defendant relies on *State* v. *Rawls*, supra, 198 Conn. 121. In that case, the court concluded that there was a double jeopardy violation under the federal constitution where the defendant was punished twice under the same statute for the simultaneous possession of two different types of narcotic substances. The court stated: "If a person steals four horses from the barn of another, all being of different color, it would not be competent to charge the thief with four different larcenies when the horses were all taken at the same time and place. *Braden* v. *United States*, 270 F. 441, 443–44 (8th Cir. [1920]). Merely because one element of a single criminal act embraces two persons or things, a prosecutor may not carve out two offenses by charging the several elements of the single offense in different counts and designating only one of the persons or things in one count and designating only the other person or thing in the other count. *Robinson* v. *United States*, 143 F.2d 276, 277 (10th Cir. [1944]). *State* v. *Cimino*, 33 Conn. Sup. 680, 684, 366 A.2d 1168 (1976)." (Internal quotation marks omitted.) *State* v. *Rawls*, supra, 120–21.

In this case, however, the defendant has not stolen four horses, each of a different color, from the same barn, but rather he has, in effect stolen one horse from one barn and another horse from another barn, each act occurring in different years, and then has failed to answer to each of these felony charges in which sepa-

rate bonds issued, by wilfully failing to appear in court. The defendant's criminal violations of § 53a-172 arise as a derivative of two previous, underlying felonies that arose from separate transactions.

Because § 53a-172 seeks to punish the act of wilfully failing to appear when called to answer to a specific crime charged, we conclude that, in this case, no double jeopardy violation exists where the defendant pleaded guilty to two counts of failure to appear on the same day for sentencing on two separate felony charges, stemming from two distinct incidents, in which separate bonds were issued. In order for double jeopardy to exist there must be a dual punishment of the same offense arising out of the same act. Here, there was one act, a failure to appear on a given day, but two offenses because each charge of failure to appear involved an element that the other did not, namely, being charged with the commission of separate felonies. *State* v. *Coleman*, 41 Conn. App. 255, 275–77, 675 A.2d 887, cert. granted, 237 Conn. 931, 677 A.2d 1372 (1996). The defendant's constitutional right to be free of double jeopardy was not violated, and he cannot prevail under *Golding*.

## B

### Sentencing on Felony Charges and Failure to Appear

The defendant also claims that his convictions on two counts of failure to appear in the first degree violated his federal and state constitutional rights not to be put twice in jeopardy because the trial court had already punished him for his failure to appear by revoking the plea agreement and sentencing the defendant to a prison term of greater duration for the underlying felony charges.[7] The defendant failed to raise this issue to the

---

[7] The defendant has offered no separate analysis under the state constitution and we choose to consider the claim solely under the federal constitution. *State* v. *Blackwell*, supra, 20 Conn. App. 195–96.

trial court and, therefore, seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. The first two elements of *Golding* are satisfied because the record is adequate for review, and the defendant bases his claim on the constitutional right to be protected against multiple punishments for the same offense. We, therefore, turn to the question of whether a violation of such right clearly exists.

Three separate guarantees are embodied in the double jeopardy clause. "It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices of Boston Municipal Court* v. *Lydon*, 466 U.S. 294, 306–307, 104 S. Ct. 1805, 80 L. Ed. 2d 311 (1984).

This case does not involve the first guarantee because the defendant was not acquitted of a crime and subsequently prosecuted for the same offense; nor does this case involve the second guarantee because this claim does not involve a second prosecution for the same offense after a conviction. Rather the defendant is attempting to invoke the third guarantee by arguing that he has received multiple punishments for the same offense.

"Sentencing is an individualized procedure in which the court has the grave responsibility to determine and impose, within applicable statutory limits, the appropriate punishment for a particular defendant. *Williams* v. *New York*, 337 U.S. 241, 246–49, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949)." *State* v. *Candito*, supra, 4 Conn. App. 158. "Punishment must fit the criminal as well as the crime." Id., 159.

Justice requires that courts be able to review the criminal's conduct outside the four corners of the particular case in order to provide a punishment that fits

the criminal.[8] "For the determination of sentences, justice generally requires consideration of more than the particular acts for which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender." *Pennsylvania* v. *Ashe*, 302 U.S. 51, 55, 58 S. Ct. 59, 82 L. Ed. 43 (1937); see also *State* v. *Huey*, 199 Conn. 121, 127, 505 A.2d 1242 (1986). Included as part of this consideration is conduct arising subsequent to the conviction of the underlying crime and prior to final sentencing. Although this subsequent conduct may result in separate criminal charges, numerous federal courts have held that such subsequent action is not barred by the double jeopardy clause. See *United States* v. *Carey*, 943 F.2d 44 (11th Cir. 1991); *United States* v. *Mack*, 938 F.2d 678 (6th Cir. 1991); *United States* v. *Garcia*, 919 F.2d 881 (3d Cir. 1990); *United States* v. *Troxell*, 887 F.2d 830 (7th Cir. 1989); *Sekou* v. *Blackburn*, 796 F.2d 108 (5th Cir. 1986); *United States* v. *Brown*, 785 F.2d 587 (7th Cir. 1986); *United States* v. *Wise*, 603 F.2d 1101 (4th Cir. 1979).

[8] The trial court had evidence of the defendant's extensive criminal past, dating back to 1976. The court stated: "Looking at your record, Mr. Garvin, this is about your ninth felony conviction going back to 1976. Burglary, burglary, burglary, again, assault two. You had gotten sentences, probation, where you could have had a drug program. The facts of the cases here, one, the commercial robbery, firearm being threatened or the use of it being threatened, people being herded into a freezer. Then we have a young girl being forced to subject herself to forcible vaginal intercourse. Serious offenses. Based upon that and based upon your record, sir, based upon the fact that you failed to appear for sentencing as agreed on the robbery charge, you are committed to the custody and care of the commissioner of correction for a period of eighteen years, suspended after twelve years, placed on probation for three years. On the sex two, five years to run concurrent. On the risk of injury, five years to run concurrent. The total effective sentence is eighteen after twelve and three years of probation. The conditions of probation are full-time employment within thirty days you are released from jail. Substance abuse evaluation and treatment is recommended."

The trial court was also made aware of the defendant's failure to appear for his presentence investigation and of the defendant's arrest for burglary in the second degree on or about December 22, 1994, after his *Alford* pleas to the underlying charges in this case.

The defendant attempts to distinguish these federal cases by arguing that in this case the trial court had already determined the defendant's appropriate sentence and then enhanced it solely due to the defendant's failure to appear. In this case, however, the trial court had not definitively determined the defendant's sentence and had reserved final consideration for a later date. Furthermore, these federal cases make no distinction as to when the conduct must be discovered before final sentencing in order to be considered by the trial court without implicating double jeopardy, and we refuse to do so.

"[T]he prohibition against double jeopardy is not implicated when a defendant is indicted for an incident of conduct previously used to increase the length of his sentence for a separate offense." *United States* v. *Mack*, supra, 938 F.2d 679. "The Double Jeopardy Clause is no more implicated here than when a sentencing judge considers *prior* criminal activity (or convictions) in imposing a sentence. Consideration of criminal conduct as an aggravating circumstance does not convert the sentencing proceeding into a trial, conviction, or punishment for the criminal activity so considered. . . . [C]onsideration of other crimes at sentencing does not implicate the Double Jeopardy Clause because the defendant is not actually being punished for the crimes so considered. Rather, the other crimes aggravate his guilt of, and justify heavier punishment for, the specific crime for which [the] defendant has just been convicted." (Emphasis in original.) *Sekou* v. *Blackburn*, supra, 796 F.2d 111–12.

The trial court in this case properly reviewed the conduct of the defendant in order to impose a suitable sentence once the original bargained sentence became improper due to the defendant's subsequent conduct. See *State* v. *DeJesus*, 10 Conn. App. 591, 603–604, 524 A.2d 1156 (1987). In doing so, the trial court properly

exercised its discretion to impose an appropriate punishment that fit the criminal and the crime.

It is not unusual to condition the acceptance of a recommendation for a plea agreement on factors, other than the elements and circumstances of the crimes to which a defendant has pleaded guilty, such as a presentence investigation report. Because the presentence report has the purpose of making certain that a penalty will fit the criminal and crime; *State* v. *Gullette*, 3 Conn. Cir. Ct. 153, 167, 209 A.2d 529 (1964); and includes many factors, including the desire of the defendants to rehabilitate themselves and including the input of victims, we have held that a trial court cannot definitively promise a particular and certain sentence until it has reviewed a presentence investigation report. *State* v. *DeJesus*, supra, 10 Conn. App. 603. "The role of a trial judge at sentencing is such that public policy considerations bear against the specific performance of any promise regarding sentencing made by a judge. Modern precepts of penology require that the discretion of a sentencing judge to impose a just and appropriate sentence remain unfettered throughout the sentencing proceedings. . . . [U]ntil sentence is pronounced, the trial court maintains power to impose any sentence authorized by law; and, though the sentencing judge may be conscience-bound to perform his own prior agreements with counsel and the parties, the court is not in law bound to impose a sentence that once seemed, but no longer seems, just and appropriate." (Citations omitted; internal quotation marks omitted.) Id., 603–604.

At the time of the plea agreement in this case, a presentence report had not yet been prepared, and therefore, the court's agreement could not be binding until such report was reviewed. See id. General Statutes § 54-91a,[9] as interpreted by Connecticut case law, per-

[9] General Statutes § 54-91a provides for a written report of investigation by a probation officer whenever punishment for a crime for which a defendant may be sentenced exceeds one year.

mitted the trial court in this case to consider the defendant's conduct subsequent to the original agreement.

Because a trial court is under no obligation to fulfill a promise made prior to the review of a presentence investigation report; *State* v. *DeJesus*, supra, 10 Conn. App. 603; the fact that the court refused to accept the agreement as a result of the defendant's failure to appear for sentencing does not give rise to a double jeopardy violation. See *State* v. *Ryerson*, 20 Conn. App. 572, 579–80, 570 A.2d 709, cert. denied, 214 Conn. 806, 573 A.2d 318 (1990). The ability of a trial court to refuse a sentence agreed upon prior to a review of the presentence investigation report does not serve as punishment for the act that gives rise to the refusal, but rather the refusal concerns the original crime for which the defendant was charged. See id.

Finally, the defendant argues that the reasoning of *United States* v. *Dixon*, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993), controls this issue. In that case, the Supreme Court found a double jeopardy violation where the defendants were convicted on substantive criminal charges based on the same conduct for which they previously had been held in criminal contempt of court and where the substantive criminal charges did not include any element not already contained in the previously tried contempt charges.

In this case, unlike in *United States* v. *Dixon*, supra, 509 U.S. 688, no prosecution, trial or proceeding prior to the defendant's convictions for failure to appear were commenced to punish the same conduct that the prosecution for failure to appear sought to punish. The fact that the defendant's conduct of failing to appear resulted in a refusal to accept the plea agreement does not amount to a double punishment for the same offense. The defendant has failed to show that a consti-

tutional violation clearly exists, and, therefore, he cannot prevail under *Golding*.

## II

## RIGHT TO WITHDRAW PLEAS

The defendant claims that the trial court exceeded its authority when, in return for the defendant's guilty pleas, it agreed to accept the plea agreement that imposed a maximum sentence of fifteen years incarceration suspended after eight years with three years probation, but conditioned its acceptance of the sentence on the defendant's appearance in court on the scheduled sentencing date. The defendant did not raise this issue to the trial court when it accepted the defendant's plea or when it sentenced the defendant, and he seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40.

When the trial court accepted the pleas, the defendant was told that if the court imposed a sentence greater than the agreed upon recommendation, the defendant would be allowed to withdraw his pleas. See footnote 3. When the trial court accepted the defendant's pleas, the court also advised the defendant that if he did not show up on the scheduled sentencing date, the court could impose a sentence up to the maximum allowed on all charges. On the date of sentencing, the trial court did exactly what he had previously told the defendant he would do. Because the defendant failed to appear at the scheduled hearing, the trial court rejected the plea agreement and imposed a longer sentence than that previously agreed upon.

The defendant argues that, according to *State* v. *Schaeffer*, 5 Conn. App. 378, 498 A.2d 134 (1985), the trial court had a mandatory obligation to afford him the opportunity to withdraw his guilty pleas once it concluded that it could not impose a sentence previously agreed upon. In *State* v. *Schaeffer*, supra, 379,

the defendant entered a plea of nolo contendere in exchange for a recommendation of a sentence of one year. The defendant was not told by the trial court that if the sentence imposed exceeded the recommendation that he would be allowed to withdraw his plea. Id., 380. The trial court also did not inform the defendant that if the case was continued for sentencing, a different sentence might be imposed. Id. At sentencing, the trial court did not advise the defendant that it would not follow the plea agreement before it imposed a greater sentence. Id. Written motions to withdraw the plea and to correct the sentence were made two days after sentencing, and the trial court denied both motions after a hearing. Id., 381.

In *Schaeffer*, the state argued that Practice Book § 720[10] prohibited the defendant from moving to withdraw his plea after the sentencing proceeding. We found that the defendant was not informed "by the court in accordance with Practice Book § 697 that since his case was being continued for sentencing, he might be sentenced by another judicial authority who might impose a different sentence from that which was the subject of the plea agreement, and, if so, that he would be allowed to withdraw his plea . . . ." Id., 387. As a result of this failure, we recognized that the plea canvass was defective and that "[a] plea which is invalid ab initio because of a deprivation of due process does not become any more valid after sentence is imposed and the sentencing proceeding has concluded." Id., 386. We, therefore, concluded that "Practice Book § 720, relating to the finality of sentencing hearings, did not prevent the trial court from granting his motion to withdraw his plea at a subsequent time." Id., 388.

---

[10] Practice Book § 720 provides in relevant part that "[a] defendant may not withdraw his plea after the conclusion of the proceeding at which the sentence was imposed."

We concluded in that case that the trial court had a mandatory obligation to inform the defendant of his right to withdraw his plea because of the imposition of a "surprise" sentence in which the defendant had not previously been informed of the possibility of an increased sentence or of his right to withdraw his plea if a sentence in excess of the plea agreement was imposed. "When the defendant's reasonable expectation that his sentence will not exceed a particular term is to be defeated because of the trial court's decision, in the proper exercise of its discretion, that a sentence in excess of an agreed term is appropriate, the defendant must be given the opportunity by the trial court to withdraw his plea. Practice Book § 698 is couched in mandatory terms. The words 'afford the defendant the opportunity then to withdraw his plea' imply action by the court in order to provide the mechanism for withdrawal. There is an affirmative obligation on the court. Practice Book § 698 is not fulfilled by placing the onus on the defendant to make a motion to withdraw his plea after the imposition of a 'surprise' sentence and before the conclusion of the proceedings." Id., 390–91.

In the present case, the defendant had been informed of his right to withdraw his plea if the trial court refused to accept the agreement, and he was informed that certain subsequent bad conduct, specifically failing to appear, could result in a refusal to accept the plea agreement. Unlike *State* v. *Schaeffer*, supra, 5 Conn. App. 378, a review of the record does not illustrate any defect in the plea canvas. On the day that the defendant was actually sentenced, he was aware that his failure to appear would likely nullify the plea agreement and possibly result in an increased sentence. The trial court at the sentencing on July 10, 1995, stated that it was refusing to accept the plea agreement, unlike the court in *Schaeffer*.

Because Practice Book § 720 precludes a defendant from withdrawing his plea after the conclusion of sentencing, "[t]he failure of the defendant to make a motion to withdraw his plea before the conclusion of the proceeding at which the sentence was imposed ordinarily precludes review of claimed infirmities in the acceptance of a plea. *State* v. *Martin*, 197 Conn. 17, 21, 495 A.2d 1028 (1985); *State* v. *Kiss*, 3 Conn. App. 400, 488 A.2d 845 (1985)." *State* v. *Schaeffer*, supra, 5 Conn. App. 385. In this case, the defendant failed to move to withdraw his pleas prior to the conclusion of sentencing.

"A criminal defendant has the capacity to waive many of his or her fundamental procedural rights. The defendant can waive the right to counsel; *Faretta* v. *California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *State* v. *Frye*, 224 Conn. 253, 617 A.2d 1382 (1992); the right to remain silent; *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *State* v. *Roseboro*, 221 Conn. 430, 442, 604 A.2d 1286 (1992); the right to be present during trial; *State* v. *Simino*, 200 Conn. 113, 125–29, 509 A.2d 1039 (1986); and, by entering a guilty plea, the rights to trial by jury and to confrontation, and the right against self-incrimination. *Boykin* v. *Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State* v. *Badgett*, 200 Conn. 412, 417, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986)." *State* v. *Patterson*, 230 Conn. 385, 392, 645 A.2d 535 (1994).

"Timely objection serves to avoid prejudicial error by permitting the trial court and the prosecutor to reconsider and perhaps change their courses of conduct while that is still possible. *Government of Virgin Islands* v. *Forte*, 806 F.2d 73 (3d Cir. 1986). . . . As the United States Supreme Court has stated, [n]o procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as

well as civil cases by the failure to make timely assertion of the right. *Peretz* v. *United States*, 501 U.S. 923, 936–37, 111 S. Ct. 2661, 115 L. Ed. 2d 808 (1991), quoting *Yakus* v. *United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 2d 834 (1944)." (Citation omitted; internal quotation marks omitted.) *State* v. *Patterson*, supra, 230 Conn. 392–93.

In this case, the trial court informed the defendant, during the course of taking his plea, of his right to withdraw his guilty pleas if the plea agreement was not followed and an increased sentence imposed. At the sentencing hearing, the trial court stated that it would not follow the plea agreement because of the defendant's subsequent conduct of failing to appear, which was the exact conduct that the trial court had warned could result in a refusal to accept the plea agreement. The defendant failed to make any motion to withdraw his pleas on the ground that the trial court imposed a sentence in excess of the plea agreement, but rather the defendant moved to withdraw his pleas on the ground that he was under the influence of drugs when he entered those pleas. Because the defendant had been advised that he could withdraw his pleas if the sentence were greater than the bargained sentence and because he had been told at the time the court accepted his pleas that a greater sentence could be imposed if he failed to appear, we conclude that the defendant waived his right to withdraw his pleas. The defendant has failed to show that a constitutional violation clearly exists, and we conclude that he cannot prevail under *Golding* because no constitutional violation clearly exists.

The judgment is affirmed.

In this opinion the other judges concurred.