# STATE OF CONNECTICUT *v.* ESTRELITA GORDON
## (AC 21156)

Landau, Schaller, and Dupont, Js.

Argued December 11, 2001—officially released May 14, 2002

*Lindy R. Urso*, special public defender, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *Eugene Callahan*, state's attorney, and *Steven Weiss*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Estrelita Gordon, appeals from the judgment of conviction of larceny in the second degree in violation of General Statutes § 53a-123 rendered after her guilty plea under the *Alford*[1] doctrine. On appeal, the defendant claims that (1) her plea was not entered knowingly and voluntarily, in violation of her right to due process, and (2) the trial court's failure to follow the mandates of Practice Book § 39-9 and the sentencing court's failure to follow the mandates of Practice Book §§ 39-10 and 39-27 constituted plain error. We affirm the judgment of the trial court.

The following facts and procedural history are necessary for our resolution of this claim. The defendant was charged by information with larceny in the second degree in violation of General Statutes § 53a-123. At a hearing on September 23, 1997, the defendant pleaded guilty under the *Alford* doctrine to larceny in the second degree. As part of the plea process, the court canvassed the defendant pursuant to Practice Book §§ 39-19 through 39-21. The court recited the underlying facts and asked the defendant if she understood that the disposition was a three year cap, to which she responded, "Yes." The court asked the defendant if she had taken any drugs, medication or alcohol that would affect her judgment. The defendant replied, "No."

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

The court also asked whether she had reviewed the file with her attorney and if counsel had explained the elements of the crime charged, as well as the maximum and minimum penalty for that crime, to which the defendant answered, "Yes." The court continued and asked the defendant if she understood the constitutional rights that she was giving up by pleading guilty. The defendant responded, "Yes." The court also inquired as to whether the defendant was pleading of her own free will and without being forced to do so, and the defendant answered, "Yes." The court asked both counsel if they knew any reason why the plea should not be accepted, and both replied, "No."

The court found that the plea was entered knowingly and voluntarily, and continued sentencing until December 23, 1997. Before continuing the case, the court stated to the defendant: "All right, you understand, Ms. Gordon, that this is a cap sentence, which means I'm going to give your lawyer a right to argue at time of sentencing. However, if you do not show up for sentencing, the failure to appear in this particular case will result in a failure to appear in the first degree charge against you, which will mean a five year felony you will be faced with on that charge. Additionally, the court will feel free to sentence you to the maximum term on the charge you have [pleaded] guilty to here . . . . Do you understand that, ma'am?" The defendant answered, "Yes." The court further stated: "You understand that if you don't show up, you will be subject to those penalties?" The defendant again responded, "Yes, I'll be here." In conclusion, the court asked, "Do you agree to that, ma'am?" The defendant answered, "I'll be here."

On December 23, 1997, the defendant failed to appear for sentencing. She was arrested more than two years later and appeared for sentencing on May 24, 2000. After the state explained the history of the case and the plea agreement to the court, the state recommended a five

year period of incarceration, and the court sentenced the defendant to five years imprisonment. The defendant did not move to withdraw her plea at any point during this proceeding. This appeal followed.

I

The defendant first claims that her plea was not entered knowingly and voluntarily in violation of her right to due process of law. While not clearly set out in her brief, the defendant asserts two arguments. First, the defendant argues that the plea was not knowing and voluntary because she did not know at the time that she entered the plea that she would be bound by it if she did not appear for sentencing. The defendant maintains that she was unaware of this because the trial court that accepted the plea failed to inform her of this consequence. Second, the defendant argues that the plea was not knowing and voluntary because the sentencing court rejected the plea agreement by imposing a sentence greater than that set forth in the plea agreement, but failed to inform her that she could withdraw her plea.

A

The defendant first claims that the plea was not knowing and voluntary because she did not know at the time that she entered the plea that she would be bound by it if she did not appear for sentencing. We are not persuaded.

At the outset, we note that the defendant failed to preserve this claim because she did not move to withdraw her plea at the sentencing hearing. We therefore review the defendant's claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), because a defendant's claim that a plea entered was not knowing and voluntary is appropriate for constitutional review under that doctrine. See *State* v. *Silva*, 65 Conn. App.

234, 240, 783 A.2d 7, cert. denied, 258 Conn. 929, 783 A.2d 1031 (2001).

"Under the *Golding* doctrine, a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . .

"In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances. . . . The first two prongs of *Golding* address the reviewability of the claim, and the last two involve the merits of the claim." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id.

We note that with respect to *Golding* review, we construe the question of whether the defendant knowingly and voluntarily entered her plea based on her understanding of the binding nature of that plea as similar to questions of voluntariness of the plea raised in the context of a defendant's knowledge of the sentencing possibilities. See *State* v. *Peterson,* 51 Conn. App. 645, 725 A.2d 333 (appeal arising from trial court's failure to advise defendant on minimum sentences for crimes to which he pleaded guilty), cert. denied, 248 Conn. 905, 731 A.2d 310 (1999). We draw this analogy because both circumstances implicate a defendant's understanding of how much time the defendant may have to serve as a result of the plea. Therefore, to satisfy

the third prong of *Golding* in the present case, "we must determine whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a [guilty] plea." (Internal quotation marks omitted.) Id., 657.

We note that the present case is controlled by *State v. Garvin*, 242 Conn. 296, 699 A.2d 921 (1997), a case with a factual scenario very similar to that of the present appeal. In *Garvin*, our Supreme Court stated that "[i]t is axiomatic that the trial court judge bears an affirmative, nondelegable duty to clarify the terms of a plea agreement. [U]nless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . When a defendant pleads guilty, he waives important fundamental constitutional rights, including the privilege against self-incrimination, the right to a jury trial, and the right to confront his accusers. . . . These considerations demand the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and its consequences. . . .

"We, therefore, require the trial court affirmatively to clarify on the record that the defendant's guilty plea was made intelligently and voluntarily. . . . In order to make a knowing and voluntary choice, the defendant must possess an understanding of the law in relation to the facts, including all relevant information concerning the sentence. . . . The defendant also must be aware of the actual value of any commitments made to him by the court . . . because a realistic assessment of such promises is essential in making an intelligent decision to plead guilty. . . . A determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant

circumstances." (Citations omitted; internal quotation marks omitted.) Id., 309–10.

In *Garvin*, the defendant pleaded guilty under the *Alford* doctrine pursuant to a plea agreement with the state. *State* v. *Garvin*, 43 Conn. App. 142, 144, 682 A.2d 562 (1996), aff'd, 242 Conn. 296, 699 A.2d 921 (1997). In *Garvin*, the following colloquy took place between the trial court and the defendant:

"The Court: I'm going to sentence you on January 6. Understand that?

"The Defendant: Yes, sir.

"The Court: Now, if I give you more than fifteen [suspended] after eight and three probation, you can take your plea back. Understand that? As long as I give you that sentence you can't take your plea back by saying I violated the plea agreement. You understand that?

"The Defendant: Yes, sir.

"The Court: Now, if you don't show up on January 6, I'm going to order a rearrest, and they are going to come and they will find you, and they'll arrest you. Now you are charged with failure to appear, you could get five years and, or, $5000 on that. You understand that?

"The Defendant: Yes, sir.

"The Court: But, I'm not going to be bound by the plea agreement of fifteen years suspended after eight years and three years probation. You understand that?

"The Defendant: Yes, sir.

"The Court: If you don't show up, when they catch you, I could give you anywhere from nine months to forty years on the robbery, risk of injury, and the sexual assault second degree, plus you have the failure to appear to worry about. You understand that?

"The Defendant: Yes, sir.

"The Court: Any misunderstanding about that?

"The Defendant: No, sir." (Internal quotation marks omitted.) Id., 144–45 n.3.

The defendant in *Garvin* failed to appear for sentencing on January 6. Id., 145. Following his arrest, the defendant appeared before the court. The sentencing court reminded the defendant that it was no longer bound by the agreement and sentenced the defendant to a term of incarceration greater than the fifteen years, execution suspended after eight years, which the plea specified if the defendant had appeared. Id. On appeal to our Supreme Court, the defendant argued that the trial court failed to articulate the circumstances under which he would forfeit his right to withdraw his pleas. *State* v. *Garvin*, supra, 242 Conn. 309. He contended that he did not know that he could not withdraw his plea if he did not appear. Id., 311.

Our Supreme Court concluded that "the trial court did not say, in so many words, that the defendant would not have a right to withdraw his guilty pleas if he failed to appear for sentencing. If this omission had, in fact, created any misunderstanding about the circumstances under which the defendant would be bound to the plea agreement, the guilty pleas would have been rendered unknowing and, therefore, involuntary." Id.

Our Supreme Court, however, determined that no such misunderstanding existed in that case. Id. It noted that at the sentencing hearing, the defendant sought to withdraw his pleas only on the ground of intoxication and not on grounds relating to the sentence or his rights pertaining thereto. Id., 311–12. The court concluded that "the defendant in fact harbored no misunderstanding about the terms of the original plea agreement. With notice of the terms of the agreement, the defendant

entered his plea knowingly and in compliance with the requirements of due process and fundamental fairness."[2] Id., 313.

In accord with our Supreme Court's disposition of the notice claim in *Garvin*, to determine whether the defendant in the present case understood that the plea was binding, we must determine whether the court's colloquy with her created any misunderstanding about the circumstances under which she would be bound by the agreement, thereby resulting in an unknowing plea. Our review of that discussion does not reveal that the defendant was misled or confused as to the terms of her plea agreement.

The transcript in the present case reveals that the court reviewed the terms of the plea with the defendant. As noted previously, the court stated that "this is a cap sentence, which means I'm going to give your lawyer a right to argue at time of sentencing. *However, if you do not show up for sentencing*, the failure to appear in this particular case will result in a failure to appear in the first degree charge against you, which will mean a five year felony you will be faced with on that charge. *Additionally, the court will feel free to sentence you to the maximum term on the charge you have [pleaded] guilty to here . . . .* Do you understand that, ma'am?" (Emphasis added.) The defendant answered, "Yes." The court further stated, "*You understand that if you don't show up, you will be subject to those penalties?*" (Emphasis added.) The defendant again responded, "Yes, I'll be here."

While the court here, as in *Garvin*, did not specifically state that the defendant would not be able to withdraw

---

[2] We note that while our Supreme Court in *Garvin* found procedural defects in the defendant's claim, its disposition of the claim is still applicable because that court also addressed the substantive aspects of the claim despite the defects. *State* v. *Garvin*, supra, 242 Conn. 312.

her plea if she did not appear, the record does not support the conclusion that this omission created a misunderstanding as to the terms of the plea agreement. The court twice asked the defendant if she understood the nature of the agreement, and twice she responded affirmatively. The defendant also specifically stated, "I'll be here," in response to the court's final inquiry as to whether she agreed to the deal, which informs us that she was aware of the importance of appearing.

Despite the court's lack of specificity regarding whether the defendant would be permitted to withdraw her plea if she did not appear, the record makes clear that the court explained, and the defendant understood, the terms of the plea and the penalties associated with not appearing at sentencing. Additionally, the defendant in this case did not move to withdraw her plea at the sentencing. This is significant in light of *Garvin*, where the court noted the defendant's failure to move for a withdrawal of his pleas, after he failed to appear, on the ground that he received a harsher sentence. Id., 311–12.

The court in the present case did not create any misunderstanding about the circumstances under which the defendant would be bound by the agreement, and the defendant was not misled as to the terms of the agreement. We conclude, in light of all the relevant circumstances, that the defendant was aware of the actual sentencing possibilities and, therefore, that she entered her plea knowingly and voluntarily. Her claim fails the third prong of *Golding*.

B

The defendant next claims that the plea was not knowing and voluntary because the sentencing court rejected the plea agreement by imposing a sentence greater than that set forth in the plea agreement, but failed to inform her that she could withdraw the plea. Though inadequately briefed, the defendant argues that

under Practice Book § 39-10, the sentencing court was required to inform her that it was rejecting the plea agreement and to afford her an opportunity to withdraw her plea.

We note again that we review this claim under *Golding*, as the defendant has failed to preserve it properly. Therefore, we must determine whether, in light of all the relevant circumstances, the plea was knowingly and voluntarily entered.

We have previously stated, in the context of discussing Practice Book § 39-10, that "[w]here the plea agreement includes a nonbinding prosecutional recommendation of sentence, the [sentencing] court, if it decides to reject the recommendation, must so advise the defendant and apprise the defendant of the sentence which it believes appropriate. The defendant must then be afforded an opportunity to withdraw his plea. Otherwise, a full understanding of the consequences of the plea is not present." *State* v. *Schaeffer*, 5 Conn. App. 378, 390, 498 A.2d 134 (1985). We conclude that the defendant's reliance on Practice Book § 39-10 in the present case is misplaced.

*Garvin* also controls our resolution of this claim. We rely on *Garvin* in addressing this claim because it is very similar to the present case in two important respects. First, an examination of the colloquy in the present case reveals that the trial court's language here is similar to the trial court's language in *Garvin*. Our previous discussion relates those similarities. Second, we construe the agreement that the defendant entered into in the present case to be of the same nature as the plea agreement in that case. In interpreting how our Supreme Court construed the plea in *Garvin*, however, we must first review our decision in *State* v. *Garvin*, supra, 43 Conn. App. 142.

On appeal to this court, Garvin claimed that the trial court improperly conditioned the acceptance of his plea on his appearance at the sentencing hearing. Id., 156. We construed the requirement that the defendant appear at sentencing as the equivalent of a condition precedent to the sentencing court's not rejecting the plea. See id., 156–60. Because that condition was not met, we determined that the sentencing court properly rejected the plea. Id., 160. We further concluded that the defendant waived his right to withdraw the plea because he did not move to withdraw it at sentencing on the ground that the court imposed a sentence in excess of the plea agreement. Id.

Our Supreme Court, however, construed the agreement differently. *State* v. *Garvin*, supra, 242 Conn. 309. In response to the defendant's assertion that the agreement was an illusory contract because he did not have the right to withdraw his plea if he failed to appear, our Supreme Court first noted that contract principles govern plea agreements.[3] Id., 313–14. It further stated that "[u]nder the terms of the defendant's plea agreement, in return for his guilty pleas, he received consideration in the form of the agreed upon sentence. One of the conditions of the agreement, however, was that the defendant appear for sentencing. Fulfillment of this condition was within the defendant's control. He understood at the outset that, if he failed to satisfy this condition, he nonetheless would be bound to the agreement. By holding the defendant to his guilty pleas, while imposing sentences reflecting his failure to appear, *the trial court did no more than enforce the terms of the plea agreement.*" (Emphasis added.) Id., 314. Thus, while we concluded that an appearance at sentencing was a condition precedent to the continued acceptance of the plea, our Supreme Court interpreted

[3] We note that while the defendant phrased his arguments to this court and our Supreme Court differently, both claims relate to the plea and its terms.

the defendant's appearance as a condition of the agreement itself.

Two important implications arise from this determination. First, by interpreting the appearance as a condition of the agreement itself, in accordance with the basic contract principles that guide our understanding of plea agreements; id.; our Supreme Court construed the agreement as having two possible binding outcomes. One would result from the defendant's complying with the condition, and the other from his breaching it. If the defendant appeared at sentencing, he would be deemed to have performed his end of the bargain. Therefore, if the sentencing court wanted to give the defendant a sentence that exceeded the term of imprisonment provided for in the plea agreement, then the defendant could withdraw the plea because the sentencing court was rejecting the plea. The first portion of the trial court's colloquy with the defendant in *Garvin* addresses this.[4]

Under the remainder of the agreement, if the defendant did not appear at sentencing, he would be deemed to have breached a condition of the agreement. On the basis of our Supreme Court's reasoning, should this occur, the agreement itself provides the remedy for the breach. The plea agreement specified that if the defendant breached the agreement by failing to appear, the court could impose any sentence consistent with the charges to which the defendant had admitted guilt.

---

[4] In *Garvin*, the following colloquy transpired between the trial court and the defendant:

"The Court: I'm going to sentence you on January 6. Understand that?

"The Defendant: Yes, sir.

"The Court: Now, if I give you more than fifteen [suspended] after eight and three probation, you can take your plea back. Understand that? As long as I give you that sentence you can't take your plea back by saying I violated the plea agreement. You understand that?

"The Defendant: Yes, sir." (Internal quotation marks omitted.) *State* v. *Garvin*, supra, 43 Conn. App. 144 n.3.

The agreement stated not only the term of imprisonment for sentencing if the defendant appeared, but also the sentence that the court would impose if the defendant did not appear on that date. The latter half of the trial court's colloquy in *Garvin* addresses this.[5]

Second, we note that our Supreme Court determined that the sentencing court did not reject the defendant's plea, but rather enforced it. The Supreme Court made this clear in its decision because it would be impossible for a sentencing court to "[do] no more than enforce the terms of the plea agreement" if it has rejected that very agreement. Id. Our Supreme Court grounded this conclusion on the contractual nature of plea agreements. After noting that a sentencing court will usually either accord specific performance to the agreement or allow a defendant to withdraw the plea, it stated that it did not agree with the defendant's contention that the court failed to accord specific performance to the plea. Id. Therefore, our Supreme Court determined that the sentencing court did, in fact, accord specific performance and, having done so, adhered to

---

[5] In *Garvin*, the following colloquy transpired between the trial court and the defendant:

"The Court: Now, if you don't show up on January 6, I'm going to order a rearrest, and they are going to come and they will find you, and they'll arrest you. Now you are charged with failure to appear, you could get five years and or $5000 on that. You understand that?

"The Defendant: Yes, sir.

"The Court: But, I'm not going to be bound by the plea agreement of fifteen years suspended after eight years and three years probation. You understand that?

"The Defendant: Yes, sir.

"The Court: If you don't show up, when they catch you, I could give you anywhere from nine months to forty years on the robbery, risk of injury, and the sexual assault second degree, plus you have the failure to appear to worry about. You understand that?

"The Defendant: Yes, sir.

"The Court: Any misunderstanding about that?

"The Defendant: No, sir." (Internal quotation marks omitted.) *State* v. *Garvin*, supra, 43 Conn. App. 144 n.3.

the accepted plea agreement underlying that obligation to perform. Combining these underlying aspects of the decision, the court determined that the sentencing court "did no more than enforce" the appropriate terms of the plea agreement that applied to the situation the defendant created. Id. Specifically, when the defendant failed to appear, the sentencing court enforced the terms that the plea stated would apply if the defendant failed to appear.

Guided by *Garvin,* we now address whether the sentencing court in the present case rejected the plea agreement by imposing a sentence greater than that set forth in the agreement. While the defendant argues that the sentencing court improperly imposed a sentence different from that in the agreement, on the basis of the similarities between this case and *Garvin,* we cannot agree. Rather, we conclude that the plea in the present case also contemplated two outcomes and that the sentencing court simply enforced the part of the agreement that related to the consequence for a breach of the condition that the defendant appear.

In the initial colloquy between the court and the defendant in the present case when the plea was taken and accepted, the court reviewed the two possible outcomes and the sentences that would attach to each. The trial court first noted at the start of the canvass the agreed upon term that the defendant had worked out with the prosecutor. Later in the canvass, it stated that the case would be continued until December 23, 1997, for sentencing, which statement assumed as a factual predicate that the defendant would appear on that date. These remarks comprised the agreement that would be in effect if the defendant appeared at sentencing. The trial court then went on to discuss the other possible outcome. The court told the defendant that if she failed to appear, the court "will feel free to sentence you to the maximum term on the charge you have pled

guilty to here . . . ." Prior to the court's making that statement, the defendant's attorney stated that the maximum penalty for the crime that the defendant was pleading guilty to was ten years. Accordingly, the second part of the agreement, applicable upon failure to appear, specified that if the defendant failed to appear and breached the agreement, she could be sentenced to up to ten years imprisonment.

When the defendant finally appeared, after breaching the condition, the sentencing court sentenced her to five years. This sentence was consistent with the part of the agreement that related to the consequence for failing to appear, namely, that the sentencing court could sentence the defendant up to ten years. The defendant's assertion that the court imposed a sentence greater than that specified in the agreement therefore must fail because the sentencing court's decision to impose five years did not exceed the term of imprisonment that the agreement itself stated the sentencing court could impose if the defendant failed to appear.

Because the sentence imposed was five years when the plea agreement allowed for as many as ten, we conclude that the sentencing court did no more than enforce the part of the agreement that related to the consequence for breach of the appearance condition.

The defendant also argues that the sentencing court in this case rejected the plea agreement. This contention is based on the defendant's belief that the sentencing court imposed a sentence greater than that provided for in the agreement. We have determined that the sentencing court did not impose a greater sentence than that in the agreement. Rather, the sentencing court accorded specific performance to the plea agreement by fashioning a sentence that was within the bounds of the agreement. In accord with *Garvin*, we conclude that the sentencing court in the present case did not

reject the defendant's plea. To the contrary, it enforced the agreement. We conclude, guided by our Supreme Court, that the sentencing court in the present case "did no more than enforce the terms of the plea agreement." Id.

Because we conclude that the sentencing court did not reject the plea agreement and enforced the terms of the plea relating to a failure to appear, we also conclude that the sentencing court had no obligation to inform the defendant under Practice Book § 39-10 because that section applies only to rejected pleas. In light of all the relevant circumstances, we conclude that the defendant's plea was knowing and voluntary, and her claim fails the third prong of *Golding*.

II

The defendant also claims that under the plain error doctrine, the plea was not knowing and voluntary because the trial court did not follow the mandates of Practice Book § 39-9, and the sentencing court did not follow the mandates of Practice Book §§ 39-10 and 39-27 (3). The defendant argues that because both courts failed to follow the procedures set forth in the rules of practice, she was never informed at any point during the entire plea process that she had a right to withdraw her plea if the sentencing court imposed a sentence greater than that set out in the agreement.

We first note that "[t]o prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Silva*, supra, 65 Conn. App. 243–44.

We dispose of the defendant's claim with regard to the sentencing court's failure to adhere to Practice Book §§ 39-10 and 39-27 (3) because those rules of practice are inapplicable to the present case. Section 39-10 pertains to plea rejections. Because we have determined that the plea in question was properly accepted, the sentencing court had no need to inform the defendant pursuant to Practice Book § 39-10.

Section 39-27 (3) deals with the withdrawal of an accepted plea when the sentence exceeds that specified in the agreement. That rule of practice does not require the court to make any statement to the defendant. Rather, it allows the defendant to move for a withdrawal after the plea has been accepted and a sentence imposed. Moreover, § 39-27 (3) is inapposite to the extent that the defendant might assert it in this case because the sentence in the present case did not exceed that specified in the plea agreement. Rather, the plea agreement contemplated both the sentence to be imposed if the defendant appeared, as well as the increased sentence that the defendant would face should she not appear.

The defendant also asserts plain error with regard to the trial court's failure to inform her when it continued the case for sentencing, pursuant to Practice Book § 39-9, that she could withdraw her plea if, after the continuance, the sentencing court imposed a sentence other than the one specified in the agreement.

The defendant relies on the proposition that "[a] trial court's failure to follow the mandatory provisions of a criminal procedural rule is plain error." *State* v. *Schaeffer*, supra, 5 Conn. App. 388. That statement cannot be read in isolation or construed as a per se rule. Rather, for a trial court's conduct to constitute plain error, the action must result in grave harm. No less is mandated by our standard of review for plain error claims, which

requires harm such that the failure to remedy the error would result in manifest injustice.

In the present case, the record reveals that the trial court did fail to offer the defendant the advisory mandated by Practice Book § 39-9. Although inappropriate, the omission did not constitute plain error because that action did not cause the defendant any discernible harm. As we have determined, the sentencing court did not impose a sentence different from that specified in the plea agreement. Therefore, the trial court's failure to notify the defendant of her right to withdraw if the sentencing court imposed a different sentence caused her no harm because that situation never arose. Because the defendant did not end up in a situation where she needed the information in the § 39-9 advisory, or where that information would even be relevant, she cannot show that the court's failure to advise her was harmful error. The defendant cannot demonstrate that the court's omission constituted manifest injustice.

The defendant also argues that the present case is similar to *State* v. *Schaeffer*, supra, 5 Conn. App. 378. In *Schaeffer*, we addressed the voluntariness of a plea when the defendant's plea was accepted and subsequently rejected at sentencing. Id., 380. In this context, we determined that it was improper for the trial court to fail to inform the defendant pursuant to Practice Book § 697, now § 39-9, and for the sentencing court to fail to inform the defendant pursuant to Practice Book § 698, now § 39-10. *State* v. *Schaeffer*, supra, 387–91.

Our review of that case, however, reveals that *Schaeffer* is not applicable here. We distinguish *Schaeffer* on the facts of the case, as well as by way of procedure. Most importantly, the sentencing court in *Schaeffer* rejected the defendant's plea. Id., 380. This stands in stark contrast to the present case where the sentencing court did not reject the plea. On the basis of the factual

predicates discussed previously that are necessary to implicate §§ 39-9 and 39-10, this distinction is critical.

Additionally, in *Schaeffer* both the trial court that accepted the plea and the sentencing court acted improperly. The trial court failed to inform the defendant when taking the plea, pursuant to Practice Book § 697, now § 39-9, of his right to withdraw if the sentencing court imposed a different sentence. Id., 387. The sentencing court then failed to inform the defendant of his right to withdraw the plea, pursuant to Practice Book § 698, now § 39-10, when it rejected the plea at sentencing. *State* v. *Schaeffer*, supra, 5 Conn. App. 388–89. This scenario worked an injustice to the defendant, given the fact that his plea agreement was rejected, because he was never given information that was critical in that situation.

In the present case, we do not have a scenario similar to that in *Schaeffer*. In contrast, here the defendant can rely only on the failure of the court to inform her under Practice Book § 39-9 since the plea agreement was not rejected. In the present case, we do not have either the duplicative error or the factual scenario, namely, the plea rejection, that we encountered in *Schaeffer*. A rejection is necessary before omissions of this sort can cause an unjust result that renders those actions plain error. *Schaeffer* does not apply.

Under the circumstances of this case, there is no plain error because the defendant cannot demonstrate that the court's failure to inform her under Practice Book § 39-9 was so harmful that manifest injustice occurred.

The judgment is affirmed.

In this opinion the other judges concurred.