## STATE OF CONNECTICUT v. SCOTT C.[1]
### (AC 29920)

Flynn, C. J., and Bishop and Beach, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued November 12, 2009—officially released March 23, 2010

*David T. Grudberg*, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's

attorney, and *Richard J. Rubino*, assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Scott C., appeals from the judgments of conviction rendered after a jury trial of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[2] All counts related to incidents involving his minor stepdaughter, which occurred at various times from 1998 through 2006. On appeal, the defendant claims that (1) the expert testimony at trial exceeded the scope of opinions disclosed by discovery and the permissible bounds of expert testimony in sexual abuse cases, and (2) the trial court erred in denying his posttrial motion for a new trial. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. The victim, A, lived in Hartford for eight years with her mother, her half sister, her half brother and the defendant, her stepfather. Starting when A was ten years old, the defendant began sexually assaulting her in their home. At first, the defendant touched A's chest and vaginal area over her clothing. When A was eleven years old, the defendant began penetrating her digitally in the basement of their home. When A was twelve, the defendant began having sexual intercourse with her. A tried to resist the defendant's advances by "hitting him and kicking him, punching him, [trying] to scratch [him],

---

[2] We note that the conduct that gave rise to the risk of injury charge allegedly occurred between October 11, 1998, and March, 2004. Although § 53-21 was amended during that time, there is no dispute that the conduct in which the defendant allegedly engaged was prohibited under all of the revisions of the statute applicable during that time period. In the interest of simplicity, we refer to the current revision of § 53-21.

whatever [she] could do." The last time the defendant had sexual intercourse with A in Hartford was when A was thirteen years old.

In March, 2004, A and her family, including the defendant, moved to a different residence in Canton. The defendant continued to force A to have sexual intercourse with him in the new home. The last time the defendant and A had sexual intercourse was in June, 2006.

On August 7, 2006, the defendant disciplined A. Upset that the defendant was yelling at her, A went to her mother and told her that the defendant was a rapist. This was the first time A disclosed any allegations that the defendant had sexually assaulted her. A's mother "freaked out and called the police." The defendant then removed the telephone cord from the wall and shut off the power to the home. A and her mother subsequently went to the Canton police department to file a complaint against the defendant. Shortly thereafter, A and her mother went to the Hartford police department to lodge a complaint against the defendant there, as well.

On August 17, 2006, A told the Canton police that she did not want to proceed with the prosecution of the defendant and that she had been mad at him and made up the allegations. A told the Canton police department that she had been upset with the defendant's attempts to control and to discipline her. She also indicated that she had a dispute with him over finances regarding $400 that he had loaned to her. Kevin Wilkinson, an officer with the Canton police department, asked A to elaborate on why she did not want the defendant to be prosecuted. A then stated that "she didn't make it up, she just wanted this all to end. She didn't want to have to testify and go to court. And she just wanted the defendant out of her life." A said that she recanted her story because her mother told her that

it was "messing her up and messing [her] family up." A also told her brother and her mother that she made up the allegations because "she hated [the defendant] and she wanted him out of her life."

At all relevant times, A was a patient of a pediatrician, Sherry Banack. As part of A's visits to Banack, during which A was sometimes accompanied by the defendant, A filled out a form indicating that she was not sexually active and that she was not concerned about pregnancies or sexually transmitted diseases. A apparently was not concerned about becoming pregnant by the defendant because he had told her that he had had a vasectomy. At no time did A inform Banack that the defendant was sexually assaulting her, despite some opportunity to do so when the defendant left A alone with Banack. After the allegations of sexual abuse had been made against the defendant, he called Banack and said: "Sherry, didn't you, like, examine her? Didn't you check her?" Banack took the defendant's inquiries to be a question as to whether she had performed a pelvic examination on A. Banack replied, "no, I don't routinely do that." This conversation led Banack to believe that the allegations were untrue because she thought "he would not have said that to [her] if he was guilty."

The state presented an expert witness, Diane Edell. By agreement of counsel, Edell testified after the defendant presented his witnesses. She was offered as an expert to testify about the late disclosure of sexual abuse by victims; she gained expertise from her work with a multidisciplinary team that investigates child sexual assault allegations in Connecticut. Edell testified as to common characteristics of sexual assault cases in which the victims did not disclose the assaults until well after they had occurred. She testified that in sexual abuse cases there is rarely any medical evidence, the abuse occurs in secrecy and disclosures of the abuse usually are delayed. She also stated that often the victim

and the offender know each other and that alleged offenders look like "everyday people." Edell explained that there were several causes for late disclosure by the victim, including the relationship between the offender and the victim, the victim's fear of destruction of the family unit if she discloses the abuse and the victim's embarrassment and guilt over the abuse that is occurring. Edell then went on to elucidate how, in her experience, purposeful or accidental disclosure occurs. She described that it was not unusual for a victim of sexual abuse later to recant her allegations. Defense counsel's brief cross-examination of Edell elicited that Edell's testimony was not related to anything that specifically happened in this case.

I

The defendant first claims that statements made by Edell were improper because they (1) exceeded the scope of the state's pretrial disclosure and, thus, strayed beyond the scope of the court's ruling permitting Edell's testimony, (2) encroached on the jury's role by impermissibly commenting on the credibility of the victim and (3) were improperly inflammatory. We decline to review this claim.

As a preliminary matter, the state argues that this claim was not preserved for appellate review because the defendant failed to object to Edell's testimony on these particular grounds and, instead, objected only to the state's late disclosure of Edell.[3] The defendant argues that his claim is preserved on appeal because he objected prior to jury selection to any expert testimony in this case. We agree with the state and conclude that the defendant's claim is unpreserved because of

---

[3] The defendant is not claiming on appeal that the court erred in permitting the expert to testify after the state first informed the defendant of its intention to use an expert on the eve of trial.

his failure to object at any time to the substance of Edell's testimony.

The following facts and procedural history are relevant. On January 31, 2007, the defendant filed a request for disclosure and inspection in which he requested, among other things, "[a]ny reports or statements of experts made in connection with the offense charged . . . which are material to the preparation of the defense or are intended for use by the prosecuting authority as evidence in chief at trial . . . ." The state did not respond to the defendant's motion with any information about a potential expert in this case.

On February, 1, 2008, the first day of jury selection, the state informed the court that its case-in-chief would consist of two witnesses, the victim and an unnamed individual who would "testify as an expert [as] to why individuals, victims, late disclose." The defendant objected to the state's proposed expert witness on the ground that the state failed to provide any information about this expert witness until the eve of trial. The court reserved judgment, allowing the state to add the expert to its witness list and instructed the parties that it would revisit the issue prior to the introduction of evidence.

The court heard further argument on the defendant's request to strike the expert from the state's witness list on February 5, 2008. The defendant reiterated his argument that the expert should be precluded because the state did not disclose its intention to present an expert witness until the first day of jury selection. He argued that he was prejudiced by the introduction of any expert testimony because the state had provided him with only the expert's identity and the vague idea that she would testify about late disclosure. The state responded that there were no reports from this expert, the expert had never met with the victim, the expert

did not know the facts of the case and the expert would "testify entirely to the generalities of late disclosure."

The court stated that "this type of evidence, the use of a person who is not going to testify to a particular fact of this case, but just as to general concepts as an expert, is [a decision] that you tend to make later in the day because you have to assess your case and make a determination typically whether you need this kind of testimony." It did not "fault the state with respect to its failure to disclose the name of the witness a year ago." Finding that the state had not acted in bad faith, the court denied the defendant's motion. It did, however, "direct the state to work with [defense counsel] to coordinate either an in-person conference or a telephone call with the witness to discuss his or her expected testimony and any other aspects of the delayed reporting concept, which this witness is going to testify to."[4] The court also noted that "this type of testimony is not novel" because "there's a whole body of literature which speaks to the concept of delayed reporting in sexual assault cases."

As stated earlier, at trial, the state called Edell as its expert in delayed reporting in sexual assault cases. Edell is a licensed clinical social worker employed with the Center for Youth and Families, a part of Charlotte Hungerford Hospital in Torrington, and serves as a member of the Governor's Task Force on Justice for Abused Children, a group that monitors the investigation of cases of sexual abuse and serious physical abuse of children. Edell has extensive experience in interviewing children who have made allegations of abuse, and she has trained others throughout the state on how to conduct such interviews.

Edell testified that there are common characteristics in child sexual abuse cases, including common reasons

---

[4] It is unclear from the record whether defense counsel actually ever conversed with the state's expert.

why most disclosures of child sexual abuse are delayed. She further testified as to the manner in which victims of child sexual abuse typically disclose the abuse and explained that many victims later recant their allegations. Finally, Edell testified as to how children undergoing sexual abuse cope with the abuse. She noted two examples, Oprah Winfrey and a former Miss America, who had coped with sexual abuse for years before disclosing the abuse much later in life. Defense counsel did not object to any of Edell's testimony, and there was no "dry run" in the absence of the jury. He briefly cross-examined Edell and highlighted the fact that her testimony was not related specifically to anything that occurred in this case. Edell was the last witness to be heard by the jury before counsel made their closing arguments. The defendant's objection to an expert's testifying at trial, as noted previously, was limited to prejudice stemming from the state's late disclosure of its intention to use an expert. On appeal, the defendant does not claim that the court improperly permitted the state to call Edell as an expert. Rather, the defendant claims for the first time that Edell improperly testified beyond the scope of the state's proffer and, thus, beyond the scope of the court's ruling to allow the expert testimony. This argument was never presented to the trial court.

"This court reviews rulings solely on the ground on which the party's objection is based. . . . [A]rticulating the basis of the objection alert[s] the court to any claims of error while there is still an opportunity for correction." (Citation omitted; internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 310, 664 A.2d 743 (1995). "[W]e have consistently declined to review claims based on a ground different from that raised in the trial court . . . ." (Internal quotation marks omitted.) *State* v. *Gebhardt*, 83 Conn. App. 772, 778, 851 A.2d 391 (2004).

In the alternative, the defendant seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), or the plain error doctrine under Practice Book § 60-5. Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id., 239–40.

The defendant argues that his claim raises a constitutional issue because it invokes his right to a fair trial and his right to a trial by jury. He claims that the expert testimony improperly encroached on the functions of the jury by determining issues of credibility of the witnesses. We are not persuaded. In *State* v. *Toccaline*, 258 Conn. 542, 550, 552, 783 A.2d 450 (2001), our Supreme Court held that the defendant's unpreserved claim that the trial court improperly permitted an expert witness to offer his opinion as to the credibility of the victim was not reviewable under *Golding* or the plain error doctrine. Noting that the defendant was attempting to "put a constitutional tag on a nonconstitutional evidentiary ruling," the court concluded that "the presentation of [the expert's] statements to the jury in the absence of such an objection did not implicate a constitutional right or result in a fundamentally unfair trial." (Internal quotation marks omitted.) Id., 550–51. Accordingly, in this case, the defendant's claim is evidentiary in nature and, as such, fails under the second prong of *Golding*.

The defendant also seeks to prevail under the plain error doctrine. "Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 25, 664 A.2d 719 (1995). The defendant cannot prevail under this doctrine because he has not established that this is a truly extraordinary situation that warrants reversal. Accordingly, we decline to review the defendant's claim that the court improperly permitted Edell to testify beyond the scope of the state's proffer.

## II

The defendant's second claim is that the jury's verdict was so clearly against the weight of the evidence that the court improperly denied his motion for a judgment of acquittal or for a new trial. We disagree.

The following procedural history is relevant to the defendant's claim. After the jury returned its guilty verdict, the defendant filed a motion for a judgment of acquittal, which alternatively sought a new trial. The motion cited three bases for relief: (1) the court improperly denied his motion to preclude the state's expert witness, (2) the evidence was insufficient to sustain the conviction and (3) the jury likely based its verdict on improper speculation and conjecture, as evidenced by questions raised during its deliberations and stated in a note to the court. The court denied the motion on March 3, 2008. On April 25, 2008, the court, nonetheless, heard argument on the same motion for a judgment of acquittal or, alternatively, a new trial. In his oral argument, defense counsel did not address the ground that the court improperly refused to preclude the testimony of the state's expert witness. The court again

denied the defendant's motion. On appeal, the defendant appears to be claiming error only with regard to the denial of his motion for a new trial.[5]

We review the court's decision to deny a motion to set aside a verdict for an abuse of discretion. *State* v. *Hammond*, 221 Conn. 264, 267–70, 604 A.2d 793 (1992). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 186, 842 A.2d 567 (2004); *State* v. *Fitzgerald*, 257 Conn. 106, 112, 777 A.2d 580 (2001).

"The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . That power, however, is subject to specific limitations. The trial court should not set a verdict aside where there was some evidence upon which the jury could reasonably have based its verdict, but should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that [the jurors] or some of them were influenced by prejudice, corruption or partiality. . . . Within these parameters, furthermore, the trial court may set a verdict aside even if the evidence was conflicting and there was direct evidence in favor of the party who prevailed with the jury. . . . The authority of

---

[5] "The defendant's motion for a new trial differs from a motion for acquittal in that it does not dispute that the state presented sufficient evidence, if found credible by the jury, to sustain her conviction. The defendant maintains, instead, that the exculpatory evidence he offered in his defense was so strong that the trial court improperly refused to rule that the verdict was contrary to the manifest weight of the evidence." *State* v. *Hammond*, 221 Conn. 264, 267, 604 A.2d 793 (1992).

the trial court to set aside a verdict that is against the weight of the evidence is grounded in the fact that the action of a jury may be as unreasonable, and as suggestive of being produced by improper influences, in passing upon the credibility of witnesses and in the weighing of conflicting testimony, as in any other respect. It is one of the duties of a judge, in the due performance of his [or her] part in jury trials, to see to it that such influences, apparently operating upon the jury, do not prevail, and manifest injustice thereby be done.

"As we repeatedly have emphasized, the trial court is uniquely situated to entertain a motion to set aside a verdict as against the weight of the evidence because, unlike an appellate court, the trial [court] has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence. . . . Indeed, we have observed that, [i]n passing upon a motion to set aside a verdict, the trial judge must do just what every juror ought to do in arriving at a verdict. . . . [T]he trial judge can gauge the tenor of the trial, as we, on the written record cannot, and can detect those factors, if any, that could improperly have influenced the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *Griffin*, 253 Conn. 195, 200–202, 749 A.2d 1192 (2000).

The defendant first reiterates his line of reasoning in his previous claim that the court improperly permitted the state's expert to testify beyond the proffer of the state and beyond the permissible bounds of expert testimony in sexual abuse cases. In his motion for a new trial, the defendant argued that the court improperly denied his motion to preclude Edell from the state's witness list on the basis of late disclosure. As stated in

part I of this opinion, we decline to review the defendant's claims that the substance of the expert's testimony was improper because this issue was not preserved properly.

The defendant then argues that his motion for a new trial should have been granted based on a claim that the verdict was against the weight of the evidence because no reasonable jury could have found A's testimony credible. In arguing that A's testimony was not credible, the defendant relies on his three witnesses, who each presented testimony that conflicted with A's testimony. The defendant's first witness, A's half brother, testified that after A disclosed the sexual abuse, he questioned A about whether she had made up these allegations. He stated that A told him that she had made up the allegations because she disliked the defendant. A's mother, the defendant's second witness, testified similarly that A told her she had made up the allegations after her initial disclosure. Finally, A's pediatrician testified that she had treated A for several years and that at no time did A mention any abuse. In fact, A had repeatedly filled out a questionnaire in her office indicating that she was not sexually active and, therefore, was not concerned about pregnancy or sexually transmitted diseases. The defendant telephoned the pediatrician after A accused the defendant of sexually abusing her to determine whether the pediatrician had ever performed a pelvic examination on A. The pediatrician stated that she had never performed such an examination. She thought that the defendant was not guilty because a guilty person would not have made such a telephone call. The defendant urges us to conclude that the testimony of his witnesses cast such doubt on the credibility of A's testimony that the jury must have been guided by improper influences to have found him guilty.

The issue presented to us, then, is whether we should reverse the court's finding that the jury reasonably

could have credited A's testimony. "In reviewing the denial of a motion for a new trial on the basis of a claim of lack of credibility, [w]e assume that the jury credited the evidence that supports the conviction if it could reasonably have done so. Questions of whether to believe or disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *McCarthy*, 105 Conn. App. 596, 605, 939 A.2d 1195 (2008), cert. denied, 286 Conn. 913, 944 A.2d 983 (2008). The jury had the ability to observe A and to evaluate her testimony along with the testimony of the defendant's witnesses; the assessment of their credibility is the function of the jury, not an appellate court. The factual situation presented is not so extreme that we can confidently reverse the trial court's assessment.

The defendant's final claim is that his motion for a new trial should have been granted because the jury's verdict was based on speculation and conjecture. He bases his claim on the note from the jury, which, he asserts, "suggests that the jury may well have been focused on issues beyond those raised by the evidence in the courtroom," in conjunction with the fact the jury deliberated for a relatively brief period of time. During deliberations, the jury sent a note to the court that presented three questions: "(1) Did Miss A ask for the [trial]?" "(2) [C]ould Miss A have stopped the [trial]?" and "(3) [W]as Miss A required to testify at the [trial]?" The prosecutor, defense counsel and the court agreed that the court could not answer the jury's questions. The court, therefore, responded to the jurors' questions by informing them that they must render a verdict based on the evidence and instructions provided by the court.

The court refused to answer their questions, stating that "[f]or me to answer these questions, I would have to reach into facts which extend beyond the evidence that you heard, and I'm not allowed to do that nor are you; nor are you allowed to speculate, for that matter." Shortly thereafter, the jury returned a verdict of guilty on all counts.

The court did not find that the jury's verdict was the result of speculation and conjecture. As the defendant concedes, A's testimony was adequate to establish each element of the crimes charged. "Moreover, we cannot infer misconduct from the duration of the jury's deliberation. The length of time that a jury deliberates has no bearing on nor does it directly correlate to the strength or correctness of its conclusions or the validity of its verdict. In fact, the length of time of the jury's deliberations is a double-edged sword. A short deliberation, rather than being indicative of a lack of diligence, may in fact attest to the strength of the [prevailing party's] case." (Internal quotation marks omitted.) *State* v. *Miller*, 56 Conn. App. 191, 200, 742 A.2d 402 (1999), cert. denied, 252 Conn. 937, 747 A.2d 4 (2000). Accordingly, we conclude that the court did not abuse its discretion in denying the defendant's motion for a new trial.

The judgments are affirmed.

In this opinion the other judges concurred.