******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* LUIS XAVIER SOTO
## (AC 38612)

Alvord, Prescott and Mullins, Js.

*Syllabus*

The defendant, who was convicted after a jury trial of criminal possession of a pistol and risk of injury to a child on the basis of evidence that was discovered in the execution of a search warrant at his cousin's apartment, appealed to this court. The jury heard conflicting testimony regarding whether the defendant owned the pistol that was seized from the closet of the bedroom in which he had been staying. Police officers who executed the search warrant testified that the defendant made certain inculpatory statements. The defendant also testified, denying that he owned the pistol and that he made any such inculpatory statements. The defendant filed a motion for a judgment of acquittal at the close of the state's case-in-chief, but did not file any postverdict motions. On appeal, the defendant claimed that the jury's verdict was against the weight of evidence presented at trial. *Held* that this court declined to review the defendant's claim, raised for the first time on appeal, that the evidence against him was so weak as to raise a substantial question regarding the reliability of the verdict and that he was entitled to a new trial, as the defendant failed to file a motion to set aside the verdict and for a new trial after the jury returned its verdict and the defendant failed to provide an adequate record to review his claim under *State* v. *Golding* (213 Conn. 233); contrary to the defendant's claim, filing a motion for a judgment of acquittal at the close of the state's case-in-chief did not preserve for appellate review his challenge to the verdict as against the weight of the evidence, and moreover, only the judge who presided over the trial where the verdict was returned was legally competent to decide whether that verdict was against the weight of the evidence, and because the defendant here failed to file a postverdict motion for a new trial, the trial court was not asked to reweigh the jury's credibility determinations or to make findings regarding the evidence and, consequently, this court could not determine from the record whether the trial court abused its discretion because that court was never called upon to exercise its discretion.

Argued April 19—officially released August 22, 2017

*Procedural History*

Substitute information charging the defendant with the crimes of stealing a firearm, criminal possession of a pistol, possession of narcotics within 1500 feet of a school and risk of injury to a child, brought to the Superior Court in the judicial district of Fairfield and tried to the jury before *Dennis, J.*; verdict and judgment of guilty of criminal possession of a pistol and risk of injury to a child, from which the defendant appealed to this court. *Affirmed.*

*W. Theodore Koch III*, assigned counsel, for the appellant (defendant).

*Linda F. Currie-Zeffiro*, assistant state's attorney, with whom, on the brief, were *Jonathan M. Sousa*, former special deputy assistant state's attorney, *John C. Smriga*, state's attorney, and *Nicholas J. Bove, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. The defendant, Luis Xavier Soto, appeals from the judgment of conviction rendered after a jury trial of one count of criminal possession of a pistol in violation of General Statutes § 53a-217c (a) (1) and one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (1). The defendant's sole claim on appeal is that this court should remand the case for a new trial because the jury's verdict was against the weight of the evidence. We decline to review the defendant's claim because it is unpreserved and not entitled to review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Accordingly, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On June 11, 2014, at approximately 5 a.m., police officers with the Statewide Urban Violence Cooperative Crime Control Task Force (task force) executed a search warrant on the second floor apartment at 217 Hough Avenue in Bridgeport. The task force had obtained the warrant on the basis of a confidential informant's tip that Francisco Pineiro, the defendant's cousin, was in possession of a black semiautomatic handgun. When the task force officers applied for the warrant, they believed that, in addition to Pineiro, Christina Jimenez and her two children resided at the apartment.

Upon entering the apartment, task force officers encountered Pineiro, Jimenez, two children aged ten and five, and the defendant. Some of the task force officers detained the apartment's occupants in the kitchen while other officers searched the apartment. The apartment had three bedrooms, one of which eventually was determined to be the defendant's. In the closet of that bedroom, Detective David Edwards found a leather backpack containing a bag of cocaine, three loose .40 caliber rounds, and a semiautomatic pistol that was fully loaded with twelve rounds. The task force officers eventually determined that the pistol had been stolen several years earlier. Edwards also found the defendant's state identification card on a television stand in that bedroom and some clothes hanging in the bedroom closet.

While being detained in the kitchen, the defendant became aware that task force officers found a pistol in the bedroom. At that point, Officer Ilidio Pereira, who was detaining the apartment's occupants in the kitchen, overheard the defendant ask Pineiro in Spanish, "quién va a tomar," which means "who's going to take it."

After recovering the pistol, Edwards questioned Pineiro, Jimenez, and the defendant about the pistol. Both Pineiro and Jimenez denied possession and knowledge of the pistol. Additionally, Jimenez was "genuinely concerned and shocked" about the pistol's presence in

the apartment and "placed the blame" on the defendant for the pistol. The defendant, who was a convicted felon, stated that the pistol was not his, that he had never seen it before, and that he did not know to whom it belonged. The defendant did indicate, however, that he was staying in that bedroom, that the clothes hanging in the closet belonged to him, and that he had been "in and out of the closet multiple times."

As a result of the search and questioning of the apartment's occupants, task force officers arrested the defendant on several gun and drug offenses. The state charged the defendant with stealing a firearm in violation of General Statutes § 53a-212 (a), criminal possession of a pistol in violation of § 53a-217c (a) (1), possession of a controlled substance within 1500 feet of a school in violation of General Statutes § 21a-279 (b), and risk of injury to a child in violation of § 53-21 (a) (1). The defendant elected a jury trial.

At trial, the state sought to establish that the defendant constructively possessed the pistol, ammunition, and cocaine seized from Pineiro's apartment. Specifically, it sought to link the defendant to those items with statements he had made to Pineiro and to task force officers at Pineiro's apartment. The defendant's statements were introduced through the testimony of several task force officers who had participated in executing the warrant at Pineiro's apartment. In particular, those officers testified that the defendant asked Pineiro "who's going to take it" in reference to the pistol, that he indicated that he was staying in the bedroom in which the items were found, that he stated that the clothes hanging in the closet belonged to him, and that he admitted that he had been "in and out of the closet multiple times."

In an effort to refute the officers' testimony with his own version of the events as to what had transpired at Pineiro's apartment, the defendant testified on his own behalf. The defendant's decision to do so rendered this case, in large part, a credibility contest between the defendant and the task force officers. The thrust of the defendant's testimony was a blanket denial of the inculpatory statements the task force officers alleged he had made, including his asking Pineiro "who's going to take it" with respect to the pistol that the officers had discovered.

Furthermore, the defendant denied that the officers asked him whether he had been staying in the bedroom in which the pistol was found, whether the backpack in which the pistol was stored belonged to him, whether the cocaine stored in the backpack belonged to him, and whether the clothes in the bedroom belonged to him. According to the defendant, the only question the officers asked him was if the gun belonged to him. The defendant testified that, in response to that question, he stated "that's not my gun, I never saw it."

The jury found the defendant guilty of criminal possession of a pistol and risk of injury to a child, but not guilty of stealing a firearm and possession of a controlled substance within 1500 feet of a school. After the jury returned its verdict, the defendant did not file any postverdict motions challenging the verdict, such as a motion for a judgment of acquittal,[1] a motion to set aside the verdict, or a motion for a new trial. The court sentenced the defendant to twelve years incarceration, two years of which were mandatory. This appeal followed.

The defendant's sole claim on appeal is that this court should order a new trial because the jury's verdict was against the weight of the evidence presented at trial. He argues that the "[s]tate's case against [him] was inherently weak." Specifically, the defendant contends that the evidentiary basis supporting the state's theory of constructive possession was a "paltry foundation" because it essentially consisted of a single piece of evidence—proof that the defendant had asked Pineiro "who's going to take it" in reference to the pistol found by police. At trial, the state had asked the jury to infer from the defendant's asking of that question that he knew about the pistol's presence and incriminating nature.

The defendant argues that he undermined this "paltry [evidentiary] foundation" by denying, during his testimony at trial, that he asked Pineiro "who's going to take it." Furthermore, even if the jury believed that the defendant asked Pineiro that question, the defendant contends that the question is not necessarily inculpatory in nature. Thus, according to the defendant, "to have a conviction rest on the foundation of four words . . . [testified to] by a police officer and denied by a defendant creates too great a risk of wrongful conviction."

The defendant also acknowledges that his failure to move to set aside the verdict and for a new trial raises an issue as to whether his claim is preserved and reviewable. The defendant argues, nevertheless, that his claim is preserved because he filed a motion for a judgment of acquittal at the close of the state's case-in-chief. He further argues in the alternative that even if his claim is unpreserved, *Golding* review is appropriate.

The state's principal response is that the defendant's claim is unpreserved and unreviewable because "the defendant never moved to set aside the jury's verdict." In particular, it argues that a reviewing court cannot consider an unpreserved weight of the evidence claim because it has not had, like the trial court, "the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence." (Internal quotation marks omitted.) Furthermore, the state contends that the

defendant is not entitled to *Golding* review because the record is inadequate to review his claim in the absence of any findings by the trial court.[2] Because we agree with the state that the defendant's claim is unpreserved and not entitled to *Golding* review, we decline to review it.

We begin our analysis of the defendant's claim with a review of the legal principles governing claims challenging a verdict as against the weight of the evidence. At the outset, we note that a challenge to the *weight* of the evidence is not the same as a challenge to the *sufficiency* of the evidence. A sufficiency claim "dispute[s] that the state presented sufficient evidence, if found credible by the jury, to sustain [the defendant's] conviction." *State* v. *Hammond*, 221 Conn. 264, 267, 604 A.2d 793 (1992), overruled on other grounds by *State* v. *Ortiz*, 280 Conn. 686, 720 n.19 and 722 n.22, 911 A.2d 1055 (2006). In contrast, a weight claim "does not contend that the state's evidence . . . was insufficient, as a matter of law, to establish the defendant's guilt beyond a reasonable doubt. . . . Rather, [it] asserts that the state's case . . . was so flimsy as to raise a substantial question regarding the reliability of the verdict [and that there was a] serious danger that [the defendant] was wrongly convicted." (Footnotes omitted.) S*tate* v. *Griffin*, 253 Conn. 195, 200, 749 A.2d 1192 (2000).

Sufficiency claims and weight claims also differ with respect to the remedy they afford. "A reversal based on the insufficiency of the evidence . . . means that no rational factfinder could have voted to convict the defendant." *Tibbs* v. *Florida*, 457 U.S. 31, 41, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982). Thus, a defendant convicted on the basis of insufficient evidence is entitled to a judgment of acquittal. *State* v. *Calabrese*, 279 Conn. 393, 401, 902 A.2d 1044 (2006). On the other hand, a reversal based on the weight of the evidence "does not mean that acquittal was the only proper verdict. . . . [Such a] reversal . . . can occur only after the State both has presented sufficient evidence to support [a] conviction and has persuaded the jury to convict. [This type of] reversal simply affords the defendant a second opportunity to seek a favorable judgment." *Tibbs* v. *Florida*, supra, 42–43. Accordingly, "the proper remedy for a successful challenge to a jury's verdict on weight of the evidence grounds is a new trial rather than a judgment of acquittal . . . ." *Sinchak* v. *Commissioner of Correction*, 173 Conn. App. 352, 362,   A.3d    (2017).

Given that these two types of claims raise fundamentally different issues, the inquiry appropriately undertaken by a court ruling on a sufficiency of the evidence claim differs substantially from that of a court ruling on a weight of the evidence claim. In reviewing the sufficiency of the evidence, a court considers whether

there is a reasonable view of the evidence that would support a *guilty* verdict. E.g., *State* v. *Calabrese*, supra, 279 Conn. 402 ("[court] construe[s] the evidence in the light most favorable to sustaining the verdict" [internal quotation marks omitted]); see also *State* v. *Gemmell*, 151 Conn. App. 590, 612, 94 A.3d 1253 (trial court ruling on motion for judgment of acquittal made pursuant to Practice Book § 42-40 applies sufficiency standard), cert. denied, 314 Conn. 915, 100 A.3d 405 (2014). In doing so, the court does "not sit as a thirteenth juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . [It] cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Morgan*, 274 Conn. 790, 800, 877 A.2d 739 (2005). Thus, a court "will not reweigh the evidence or resolve questions of credibility in determining whether the evidence was sufficient." *State* v. *Lekosky*, 41 Conn. App. 746, 747, 677 A.2d 489 (1996).

In contrast, a court determining if the verdict is against the weight of the evidence does precisely what a court ruling on a sufficiency claim ought not to do. That is, the court "must do just *what every juror ought to do* in arriving at a verdict. The juror must use all his experience, his knowledge of human nature, his knowledge of human events, past and present, his knowledge of the motives which influence and control human action, and test the evidence in the case according to such knowledge and render his verdict accordingly. . . . The trial judge in considering the verdict *must do the same* . . . and if, in the exercise of all his knowledge from this source, he finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality, then it is his duty to set aside that verdict and to grant a new trial." (Emphasis added; internal quotation marks omitted.) *Sinchak* v. *Commissioner of Correction*, supra, 173 Conn. App. 368–69. In other words, the court specifically is required to act as a "thirteenth juror" because it must independently "assess [the] credibility [of witnesses]" and "determine the weight that should be given to . . . evidence." (Internal quotation marks omitted.) *State* v. *Griffin*, supra, 253 Conn. 201–202.

Thus, because a court is required to independently assess credibility and assign weight to evidence, a weight of the evidence claim necessarily raises the issue of which courts are competent to perform those tasks. It is well settled that "*only the judge who presided over the trial* where a challenged verdict was returned is legally competent to decide if that verdict was against the weight of the evidence . . . ." (Emphasis added.) *Sinchak* v. *Commissioner of Correction*, supra, 173

Conn. App. 362. Consequently, "*a judge in a later pro-ceeding, such as a direct appeal* or a habeas corpus proceeding, *is not legally competent* to decide such a claim on the basis of the cold printed record before it." (Emphasis added.) Id. The rationale behind this rule is sound: "[T]he trial court is uniquely situated to entertain a motion to set aside a verdict as against the weight of the evidence because, unlike an appellate court, the trial [court] has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence. . . . [T]he trial judge can gauge the tenor of the trial, as [an appellate court], on the written record, cannot, and can detect those factors, if any, that could improperly have influenced the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *Griffin*, supra, 253 Conn. 201–202; see also id., 202 ("[o]nly the trial judge [i]s in a position to evaluate . . . testimony, along with the other relevant evidence, to make . . . a determination [of whether the verdict is against the weight of the evidence]").

The rule that the trial judge is the only authority competent to rule upon weight claims has obvious implications for appellate review of such claims. Our Supreme Court previously has refused to review a claim challenging the jury's verdict as against the weight of the evidence because it was made for the first time on appeal. *State* v. *Griffin*, supra, 253 Conn. 202.

In reviewing the facts underlying *Griffin*, we note that they are analogous to the present case in two important ways. First, like the defendant in the present case, the defendant in *Griffin* moved for a judgment of acquittal after the state rested but did not file a postverdict motion to set aside or motion for a new trial. Id., 200 n.8. Second, the specific claim in *Griffin* was that "the testimony of the state's key witness . . . was not believable"; id., 202; and, therefore, like the defendant's claim in the present case, principally challenged the jury's credibility determinations.

In declining to review the unpreserved weight claim in *Griffin*, our Supreme Court stated that it could not "[o]n a cold record . . . meaningfully assess . . . [the] credibility [of the state's key witness] to determine whether his testimony . . . was so unworthy of belief as to warrant a conclusion that allowing the verdict to stand would constitute a manifest injustice. . . . *Only the trial judge* was in a position to evaluate [that] testimony, along with the other relevant evidence, to make such a determination."[3] (Citations omitted; emphasis added.) Id.; see also *Sinchak* v. *Commissioner of* Correction, supra, 173 Conn. App. 364–72 (affirming habeas court's refusal to review procedurally defaulted claim challenging weight of evidence because only trial court is in position to determine if verdict was against weight of evidence).

Because an appellate court cannot make an initial ruling on a weight of the evidence claim, appellate review of such a claim is greatly circumscribed. "Appellate review of a trial court's decision granting or denying a motion for a new trial must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided." *State* v. *Hammond*, supra, 221 Conn. 269. Therefore, "[t]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict and a motion for a new trial is the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached. . . . A verdict must stand if it is one that a jury reasonably could have returned and the trial court has accepted." (Citation omitted; internal quotation marks omitted.) *State* v. *Fred C.*, 167 Conn. App. 600, 606, 142 A.3d 1258, cert. denied, 323 Conn. 921, 150 A.3d 1150 (2016).

Thus, if asked to review the trial court's ruling on a weight of the evidence claim presented to it, an appellate court is not to independently make credibility determinations or assign weight to evidence. Furthermore, our task is not to assess the jury's credibility determinations and assignment of weight to evidence. Rather, our task is to review, for an abuse of discretion, the trial court's assessment of the jury's credibility determinations and assignment of weight to evidence. See, e.g., *State* v. *Scott C.*, 120 Conn. App. 26, 40, 990 A.2d 1252 ("[When reviewing a weight claim predicated on credibility determinations, the] issue presented to us . . . is whether we should reverse the [*trial*] *court's finding* that the jury reasonably could have credited [the challenged] testimony. . . . [We must decide whether to] reverse the *trial court's assessment* [of the jury's credibility determinations]." [Emphasis added.]), cert. denied, 297 Conn. 913, 995 A.2d 956 (2010).

Having set forth the relevant law, we now turn to the defendant's claim that the verdict is against the weight of the evidence. In addition to arguing the claim's merits, the defendant also contends that the claim is preserved and reviewable. We disagree in light of our Supreme Court's decision in *Griffin*, which we conclude controls the present case. See *State* v. *Griffin*, supra, 253 Conn. 201–202. *Griffin* teaches that a defendant cannot obtain appellate review of his weight of the evidence claim unless it was preserved at trial. Under *Griffin*, moving for a judgment of acquittal at the close of the state's case-in-chief does not preserve a weight claim. Accordingly, we conclude that the defendant's

filing of a motion for a judgment of acquittal[4] did not preserve his claim.

Notwithstanding our Supreme Court's holding in *Griffin* that unpreserved weight of the evidence claims are unreviewable, the defendant cites three cases that purportedly permit our review of such claims. We are unpersuaded by the defendant's reliance on these cases.

The defendant first contends that *State* v. *Avcollie*, 178 Conn. 450, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980), stands for the proposition that we can review, for error, the trial court's failure to *sua sponte* set aside the verdict. In particular, he relies on certain language from *Avcollie* in isolation, namely, the court's remark that the "trial court has inherent power to set aside the verdict, even though no motion has been made." (Internal quotation marks omitted.) Id., 455. When read as a whole, however, *Avcollie* does not support the defendant's position because it did not involve an *unpreserved weight* of the evidence claim. Id., 454–55. Rather, it involved a *sufficiency* claim that was raised *at trial* in a motion to set aside the verdict. Id., 454–55, 459; see also id., 471 n.5 ("the sole issue in this appeal was whether the evidence before the jury was *sufficient* to support [its] verdict" [emphasis added]).

The second case on which the defendant relies is *State* v. *Franklin*, 162 Conn. App. 78, 129 A.3d 770 (2015), cert. denied, 321 Conn. 905, 138 A.3d 281 (2016). On appeal to this court, the defendant in *Franklin* presented separate sufficiency and weight claims that were "substantively identical" because they both revolved around whether the jury should have believed a particular witness. Id., 81, 93–94. We first rejected the sufficiency claim on its merits, concluding that we could not second-guess the jury's credibility determinations. Id., 85–87. Turning to the weight of the evidence claim, we noted that, although "the defendant did not preserve this [claim] by moving for a new trial"; id., 93; he requested *Golding* review. Id. We apparently assumed, without deciding, that the defendant's weight claim satisfied *Golding's* reviewability prongs. Id. Then, we noted that "we [were] aware of no reason that prohibited the jury from crediting [the witness's] testimony." Id., 94. Therefore, we simply rejected the weight claim on the same grounds that we rejected the sufficiency claim, namely, that we on appeal declined to second guess the credibility determination made by the jury. Id., 93–94.

We do not read *Franklin* as requiring us to review an unpreserved claim challenging a verdict as against the weight of the evidence, nor does it foreclose our consideration of whether the reviewability prongs of *Golding* can be satisfied when such a claim is made. Rather, *Franklin* presented a unique situation where "substantively identical" weight and sufficiency claims

were made. In avoiding adjudicating the issue of whether *Golding* review was appropriate, we simply resolved the defendant's claim by relying on our analysis of the defendant's sufficiency claim. The sufficiency claim, like the weight claim, essentially amounted to no more than an attack on the jury's credibility determinations, and we cannot second-guess such credibility determinations when reviewing either type of claim. *State* v. *Carlos C.*, 165 Conn. App. 195, 200, 138 A.3d 1090, cert. denied, 322 Conn. 906, 140 A.3d 977 (2016); *State* v. *Scott C.*, supra, 120 Conn. App. 40.

The third case on which the defendant relies is *Tibbs* v. *Florida*, supra, 457 U.S. 31. In *Tibbs*, a state appellate court set aside a verdict after performing its own reweighing of the evidence and reassessment of credibility. Id., 35–39, 42–43, 46–47. *Tibbs* is inapposite because a state rule of practice *required* the appellate court to perform its own reweighing of the evidence in any appeal in which the defendant had been sentenced to death. Id., 36 n.8 (rule provided that "[u]pon an appeal from the judgment by a defendant who has been sentenced to death the appellate court *shall* review the evidence to determine if the interests of justice require a new trial" [emphasis added]). The parties have not identified any comparable rule of practice that requires or permits this state's appellate courts to perform such a review.

Our analysis does not end with concluding that the defendant's claim is unpreserved because the defendant also requests *Golding* review. As previously explained, although *Griffin* stands for the proposition that unpreserved weight of the evidence claims are unreviewable, *Griffin* did not address *Golding*'s applicability to such claims. The defendant argues that his claim satisfies all four *Golding* prongs, and the state counters that his claim fails *Golding*'s first two prongs, which concern reviewability. See, e.g., *State* v. *Gordon*, 69 Conn. App. 691, 695, 796 A.2d 1238 (2002). We agree with the state that the defendant's claim is not entitled to *Golding* review because it fails *Golding*'s first prong.

"Under *Golding*, as modified in *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Mitchell*, 170 Conn. App. 317, 322, 154 A.3d 528, cert. denied, 325 Conn. 902, 157 A.3d 1146 (2017). "The first two prongs of *Golding* address the reviewability

of the claim, and the last two involve the merits of the claim." *State* v. *Gordon*, supra, 69 Conn. App. 695.

"[T]he inability to meet any one prong requires a determination that the defendant's claim must fail." *State* v. *Ricketts*, 37 Conn. App. 749, 761, 659 A.2d 188, cert. denied, 234 Conn. 913, 660 A.2d 355, cert. denied, 516 U.S. 977, 116 S. Ct. 481, 133 L. Ed. 2d. 409 (1995). "The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *State* v. *Gordon*, supra, 69 Conn. App. 695.

Turning to the application of *Golding*'s first prong to the present case, we conclude that the defendant has not provided a record that is adequate to review his claim challenging the verdict as against the weight of the evidence.

We have explained throughout this opinion that the defining characteristic of a weight claim is that "only the judge who presided over the trial where a challenged verdict was returned is legally competent to decide if that verdict was against the weight of the evidence . . . . [A court] in a later proceeding, such as a direct appeal or a habeas corpus proceeding, is not legally competent to decide such a claim on the basis of the cold printed record before it." *Sinchak* v. *Commissioner of Correction*, supra, 173 Conn. App. 362.

A weight claim predicated on a challenge to the jury's credibility determinations, which is the type of claim the defendant presents in this appeal, requires the trial court to make its own assessment of the jury's credibility determinations. See *State* v. *Griffin*, supra, 253 Conn. 201–202. In other words, it is called upon to act as a "thirteenth juror" and "do just *what every juror ought to do* in arriving at a verdict." (Emphasis added; internal quotation marks omitted.) *Sinchak* v. *Commissioner of Correction*, supra, 173 Conn. App. 368. Accordingly, when an appellate court reviews this type of claim, "[t]*he issue presented to* [*it*] . . . is whether [it] should reverse the [*trial*] *court's finding* that the jury reasonably could have credited [the challenged] testimony. . . . [It must decide whether to] reverse the *trial court's assessment* [of the jury's credibility determinations]." (Emphasis added.) *State* v. *Scott C.*, supra, 120 Conn. App. 39–40.

In the present case, the defendant never asked the trial court to set aside the verdict on the ground that it was against the weight of the evidence. The defendant's appellate claim challenging the jury's credibility determinations was never ruled upon by the trial court and, therefore, is presented to this court for the first time on appeal. Given that the trial court is the only authority competent to assess the jury's credibility determinations, we cannot, on appeal, stand in its stead and make

such an intricate assessment ourselves on the cold printed record alone.

Indeed, the scope of our review is limited to evaluating, for an abuse of discretion, the *trial court's findings* regarding *its* assessment of the jury's credibility determinations. Since those findings were not made in the present case, there is nothing for us to review, and we are without a basis for determining whether the trial court abused a discretion that it was never called upon to exercise. See, e.g., *State* v. *Padua*, 73 Conn. App. 386, 413, 808 A.2d 361 (2002) ("Had the issue been raised properly by motion, the trial court could have been alerted to what this defendant has raised for the first time on appeal. . . . If in fact the trial court acted upon a motion presented to it, it could have articulated the reasons why it so denied the relief sought. . . . [Thus] there is no adequate record for review nor is there a basis for determining that there was an abuse of a discretion which the court was never called upon to exercise."), rev'd in part on other grounds, 273 Conn. 138, 869 A.2d 192 (2005); see also *State* v. *Brunetti*, 279 Conn. 39, 63, 901 A.2d 1 (2006) ("[This court's] role is not to guess at possibilities . . . but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's claims] would be entirely speculative." [Internal quotation marks omitted.]), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007).

Accordingly, we conclude that the defendant's unpreserved claim is not entitled to *Golding* review because the record is inadequate for review.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant did move for a judgment of acquittal after the state had rested. He did not, however, renew that motion after the jury returned its verdict.

[2] The state also argues that the defendant's claim challenging the verdict as against the weight of the evidence also fails under *Golding's* second prong because it is not of constitutional magnitude. Because we conclude that the record is inadequate, we need not reach this issue.

[3] The parties in *Griffin* did not brief the issue of whether an unpreserved claim challenging a verdict as against the weight of evidence is reviewable under *Golding*. Thus, the court in *Griffin* had no occasion to address the applicability of *Golding* to such a claim.

[4] Our Supreme Court has noted that a defendant properly preserves a claim challenging the verdict as against the weight of the evidence by raising it in "a motion to set aside the verdict as against the weight of the evidence." *State* v. *Griffin*, supra, 253 Conn. 201–202. This court has noted that such a claim is preserved by raising it in a motion for a new trial made pursuant to Practice Book § 42-53. *State* v. *Franklin*, 162 Conn. App. 78, 93, 129 A.3d 770 (2015), cert. denied, 321 Conn. 905, 138 A.3d 281 (2016). We do not believe this difference in nomenclature is consequential for purposes of preservation. See, e.g., *State* v. *Taylor*, 196 Conn. 225, 228 n.3, 492 A.2d 155 (1985) ("Practice Book § [42-53] . . . replace[d] the motion to set aside a verdict with a motion for a new trial"); *State* v. *Henton*, 50 Conn. App. 521, 523 n.1, 720 A.2d 517 ("[a]lthough the defendant entitled [his motion] a motion to set aside the verdict, the trial court treated it as a motion for a new trial pursuant to Practice Book § 42-53" [internal quotation marks

omitted]), cert. denied, 247 Conn. 945, 723 A.2d 322 (1998). In any event, the defendant's claim in the present case is not preserved because it was not raised in *either* a motion to set aside or a motion for a new trial.

———————————————————